17-1318 Nanda v. Phillips 66 Company. All right, counsel, we're ready. And if you could please state your name for the record. My name is Hal Bruno. I'm with the law firm of Robinson, Waters and Adorcio. At the appellant's table is my client, Baljeet Nanda. May it please the court. There's no... I want to reserve three responsibilities to keep track of that. I will do that. There's no evidence in this record that Mr. Nanda reached this contract with Phillips 66. I can say that with such conviction because Phillips 66 did not introduce evidence regarding the salient predicate facts for the jury to find liability. In turn, without these predicate facts, the jury ignored the contract and imposed liability based on some other reasoning that we can only guess at. What facts were not covered to the jury? Sure, sure. First of all, we have two buckets of issues here. We have the $50,000 receivable and the approximately the $318,000 environmental thing. Let me address the $50,000 receivable. First of all... This is from the books and records. Books and records, right. That's section 3.18. Right. And Mr. Nanda... Didn't Fisher, Mr. Fisher and Mr. Fralichs testify to the they don't owe the $50,000 because of a maintenance offset. Well, isn't that something that the jury can decide what they believe based on that testimony? So there is evidence of some kind. Well, that's very different though than what was the obligation in the contract. The jury and where you're going, Your Honor, is that this was some sort of guarantee. What the actual obligation was... It was a representation. Excuse me? It was a representation. It's a representation as of February 2013. Subsequently, Gaspart saying to Phillips 66 that we don't owe it because of this maintenance offset is very different than Mr. Nanda misrepresenting in February of 2013 that the books and records. What's more, Your Honor, there's no evidence in the record that Mr. Nanda knew in February of 2013 that Gaspart was taking this offset. Moreover, you have to remember even if Mr. Nanda knew in February of 2013 that Gaspart was taking this offset, if you look at Exhibits 45, 46, and 48 in the record in our appendix, those were the contracts between Mr. Nanda and Gaspart. And the obligation for maintenance was on Gaspart. It wasn't on Mr. Nanda. So it's very important to remember that because under no circumstances then could that receivable have been misstated. This is all compounded further by the fact that Phillips 66 ignored the contract and never gave notice to Mr. Nanda with regard to this maintenance offset. They were obligated... Was that notice issue ever raised during the trial? Yes, it was. If I may, Your Honor, in opening at... Opening doesn't cut it. It's got to be... In cross it was raised at $757.24 and in closing at $833.20 through $836.13 as well as $872.00, five through eight. What are you relying on for the obligation, for their obligation to give you notice? In the contract, Your Honor, it's section 11.3. And that particularly requires notice to be given by overnight mail or by certified mail. And notice was a material obligation here because if notice was given... And what does that say that the notice... What notice has to be given in what circumstance under that section? When there's some material fact that's not as represented in the contract. That's... You got to go back to section 5.7B of the contract for that issue. Well, it seems to me that that's what I thought. And I think 5.7 actually deals with whether any of their... They have to give notice if any of their own representations were incorrect. And you're suggesting that they have to give you notice if they think your representations were incorrect. Well, 11.3 though... Is that... If that's the way I'm reading it. 11.3 though is more general. You have to give notice of any sorts of breaches or problems with respect to the contract. You know, Mr. Nanda was held on his affirmative claims for the option strictly to the contract. And you just can't have it both ways. Let me address the environmental issue too. That's really the second bucket and the large one. Before we move on, I'm looking at 11.3 and it discusses the form of notice if it's already required or permitted under the agreement. But it doesn't create an independent obligation to give notice. So I'm still sort of in the camp with Judge Moritz on where the obligation to give notice comes from the agreement. Under the contract, it seems to me that if you claim a breach, you need to give notice. Is there a place in the contract that you rely upon for that? I thought it was 5.7. Okay, just a minute ago I thought you said 11.3. As well as 11.3 in combination. Well, wasn't a letter introduced as Appellant Supplemental Appendix 72526 notifying Mr. Nanda of the alleged violation and reminding him of his obligation to pay? That was with respect to the environmental issue, the remediation issue. I thought we were talking about that. That's Exhibit 278. That was the email and that's not via But more importantly, I read 5.7 exactly how Judge Moritz reads it, which is that you have an obligation to give notice if you learn that one of the reps or warranties that you made under the contract are incorrect, you have an obligation to notify the other party and to make a correction. Even if you put the notice provision, though, in the parking lot for now, with respect to the maintenance obligation, that maintenance obligation was gas marks. And more importantly, with respect to the rent receivable, the obligation in the contract was for Mr. Nanda to represent accurately the receivable as of February 2013. There's no evidence that he did that. Let's say we agree with you on the rent receivables. Evidence was insufficient. Don't you still have a because the jury came back with, I agree, $50,000, but my understanding is the jury didn't indicate whether it based that on the rent receivables or the inventory receivables. And those were both kind of all lumped together from what I can tell. And if the inventory receivables were misstated and there's evidence of that, couldn't the jury just as easily have based that amount on that? Why would we exclude that? You see what I'm saying? Yeah, I understand exactly what you're saying. I get that it's a strange figure, $50,000, if it was based on the inventory receivables. And that was exactly what the rent receivable was. But we don't know that. No, you don't. But the rent receivable issue had problems as well. And I addressed that fully in my brief on that. But I'm focusing here now on the rent receivables. Well, my understanding of your brief on the rent receivables issues, you seem to be focusing on the, I can't remember the name of the clause, the books and records, or particular clause in the contract when my understanding of their claim, although it's not spelled out well in their brief either, nobody really talks about what the actual alleged breach was here. And I think their argument is that you breached the misrepresentation clause, not the books and records clause, which you seem to focus on with respect to the inventory issue in your brief. The contract, not the contract, the complaint, the complaint says section 3.16. Well, the complaint also refers to the misrepresentation, 3.23 accuracy of information. The complaint does refer to that. And that's also a fundamental issue too, is a misrepresentation of breach of contract. The counterclaim, I'm sorry, I'm talking about the counterclaim. Yeah, the counterclaim, we're both talking about the counterclaim. Right. But so I guess I was, I didn't really necessarily understand all your concern. You seem to be talking about a breach of a different clause, is what I'm saying. When you were focusing on the fact that they didn't introduce any evidence that your books and records were inaccurate, I'm not sure that matters to the misrepresentation clause. I didn't see any correlation between the two clauses. Right. But the point is that at the time of the contract, you need to assess whether it was inaccurate. And there's no evidence in the record that at the time of the contract it was inaccurate. The only evidence is the testimony of the Phillips 66 executives who subsequently say, we went to GasMart and GasMart wouldn't pay because of this maintenance issue. And the problem with the maintenance issue is the maintenance issue was an obligation of GasMart. As far as the environmental remediation issue though, the counterclaim of Phillips 66 relies primarily on this Exhibit 278, as well as the testimony of Mr. Schlitzler. Both of those just don't cut it. First of all, Exhibit 278, it does not state the crucial information as to when the contamination occurred. In fact, it says it's about new releases. It doesn't say the contamination happened in February of 2013 when the contract was there. Mr. Schlitzler can't fill in that gap either, Your Honors, because Mr. Schlitzler didn't write that email and he was a financial type and not that person. But that's a hearsay objection, right? Pardon? You're making a hearsay objection. I'm not relying on a hearsay objection for you to overturn the trial court. Well, he did testify to that. He did testify and there was no hearsay objection. Right. So you're a little late now to say that he wasn't competent to testify to it. But he also testified subsequently without the hearsay objection that he had no personal knowledge of what happened in February of 2017. But he testified that four of the gas stations, they did an environmental assessment of those gas stations and discovered environmental contamination on all four of them. Right? But he didn't testify as to the timing. Well, we're talking okay. Could the jury reasonably infer that to the extent we're talking about contamination from, for example, a leaking underground storage tank, that it didn't happen instantaneously upon the sale date? Well, the contract requires it to be February of 2013, number one. But at 278, the email says that it's new releases. Okay. And you're running out of your time in case you're concerned. Understood. Understood. There's also the failure of the invoice under section 5.223.3. Was that raised prior to your motion for a new trial, that issue? What was raised, Your Honor, was a failure to follow the contract at 872-526. Was it a general statement? Yes. And didn't the trial court conclude that you would waive that particular argument since it was never raised as a defense at trial? The trial court, I don't think, can fairly conclude that with what the contract said and what the motion for new trial said at page 20 of our appendix. But it was generally argued that the, that Phillips 66 did not follow the contract. That's 872-526. But there was a letter introduced and 5.22.3 just talks about a receipt of an invoice documenting the cost and an explanation of why the costs were not covered. And that letter has no dollar value. Does it have to? There's no dollars in there. There's no invoice in there. You owe us this money. And there couldn't be because it said we're going to go out and remediate. They didn't even know what the number was then. That's my point on the invoice issue. I'm not sure I follow that, but you're out of time. I have 13 seconds left. My only point. Actually, you're over 17 seconds. Sorry. Thank you. May it please the court. I'm Claire Wells Hanson here representing Phillips 66. The trial court acted within its broad discretion in finding that the jury's verdict was not clearly, decidedly, or overwhelmingly against the weight of the evidence. Mr. Bruno just spent much of the last 15 minutes wading through the evidence that came in at trial on Phillips 66's two counterclaims that are at issue here. A year and a half ago, Judge Blackburn did the same. He sat, he presided over a week-long trial. He made numerous rulings and then he hashed that same evidence when he denied Mr. Nanda's motion for a new trial. He relied on his firsthand knowledge in doing so. Because Mr. Nanda only brought a Rule 59 motion, he did not bring a Rule 50 motion. This panel's task is to determine whether Judge Blackburn abused his discretion in coming to his decision. He did not. There are three main categories I'd like to discuss today. First, the standard of review. Second and third, the evidence that came in on the two counterclaims that are at issue here today. With regard to the standard of review, Mr. Bruno didn't discuss this at all, but typically this court would see sufficiency of the evidence challenges under a Rule 50 motion. Mr. Nanda did not a Rule 59 motion for a new trial. That means that instead of being a de novo review, this is solely an abuse of discretion review. The evidence must be viewed in the light most favorable to the apoly here. And the apoly must be given the benefit of all inferences fairly drawn there from. This court has routinely viewed evidence in the light most favorable to the party opposing a motion for a new trial. When Fashion... Your briefs are like two ships passing in the night. Nobody talks about what breach was alleged. What was the breach of contract here? What provision was breached? Was the jury told what provision was breached? What did they decide about the breach? What breach were you relying on? Yes, Your Honor. So we have two different breaches of contracts that were alleged. First, for accounts receivable. In your counterclaim? Correct. Was the jury told that? Yes. Did they decide based on each breach? In the verdict form? Yes. There were three different breaches of contracts alleged in the counterclaim. Phillips 66 did not prevail on the largest of the three. It prevailed on the other two. The verdict form did differentiate between the three different breaches. I'm talking about the basis in the contract for the breach. What provision was breached? Yes. What are we talking about here? Are we talking about the misrepresentation clause? It's different provisions of the contract. As to the receivables? As to the accounts receivable, in our counterclaim, we cited both 3.18 and 3.23, as you've noted. And 3.18 is the books? 3.18 is the books and records. So you said both. What did the jury decide was breached? The jury didn't, the verdict form didn't state a specific provision. The verdict form actually... That's what I thought. How do we even know what the jury decided was breached here? The evidence was put before the jury quite clearly as regards each of the three individual breaches that were alleged. But they didn't decide. They didn't decide which provision was breached. So when we're talking about sufficiency of the evidence now, we need to know which breach we're talking about to know whether the evidence was sufficient as to that breach. For instance, you identified in your counterclaim 3.23 and you seem to be referring consistently to misrepresentations that were made. And yet, that provision requires the misrepresentation to be of a material fact. And I don't see where the jury was ever asked to decide, was it a material misrepresentation? And I get that this isn't what we're hearing from the plaintiff here, but it's a little bit difficult when we're talking about sufficiency of the evidence to determine whether the evidence was sufficient as to the breach. I understand, Your Honor. The verdict form is verdict form B, which is in the appendix, Mr. Nanda's initial appendix. It did differentiate topically between the three breaches. Right. But it did not state a specific provision that was breached, but those provisions were covered sufficiently. That's a problem, though. We're talking about 3.18 now. Yeah. I don't want to put words in your mouth. Well, the jury didn't decide. And I think that what we're hearing from the plaintiff is that this is a problem under 3.18 under the Books and Records Clause because you didn't put in evidence of a breach of that particular provision. And so I'm thinking, all right, what evidence, what provision are we talking about here? You seem to be talking about the misrepresentation clause, that there was evidence of that. I think that's important in deciding sufficiency of the evidence. Agreed. I'm sorry, longest question Judge Kelly's ever heard. If we go to Section 3.18, it actually says, all of the books, records, and accounts of the sellers are true and complete in all material respects, and subsection D says, are reflected accurately in all material respects in the financial statements. The financial statements is defined in Section 3.9 of the APA. And it says it includes the consolidated balance sheet of the seller. The balance sheets list the accounts receivable. It's one of the line items on the asset section of the balance sheet. I understand all that. Was the jury asked to decide whether there had been a material misrepresentation under 3.23? The jury was not specifically on the verdict form. There were jury instructions given regarding these specific breaches. These specific provisions, 3.18 at least, was specifically read aloud to the jury via Mr. Fisher's testimony. And the jury in the verdict form does say it finds, it differentiates specifically between these three alleged breaches. It says, the jury found that after it cites that it finds that we adequately proved breach of contract, it says the difference between the value of the accounts receivable as represented by the plaintiff and the actual value of the accounts receivable. I understand that. But the accounts receivable and their value isn't the alleged breach of the contract provision. The jury has to know, don't they, what contract provision was breached? So for instance, and I keep asking you, on the material misrepresentation clause, if they were to find a breach of that provision, wouldn't they have to find that it was a material breach? Yes, but I don't... Did they? The jury was not given an instruction on the material misrepresentation clause. They were giving an instruction on section 3.18. So when the plaintiff says that you needed to put in evidence of the books and records and what they said, you probably did because it was a violation of, apparently the jury found a violation of that provision and not the misrepresentation provision? Yes. The misrepresentation provision is, although it was cited in our counterclaim, that is not the provision that Phillips 66 relied on at trial. 3.18 is the provision that Phillips 66 relied on at trial. And it does, in that representation, Mr. Nanda attested that the financial statements. Mr. Fisher also testified... So do you need to put on evidence of the books and records as they existed and why they were inaccurate then? We did put on, yes, yes to the second part of that question. We did put on evidence as to why they were inaccurate. We did not need to put on evidence as to... We didn't need to present his actual books and records, as Mr. Nanda alleges in his briefs here, because it's a specific, it's sort of like best evidence. It's a specific type of evidence that he would like us to have presented. That is not the evidence that we presented, but the evidence that we presented was adequate. Well, the asset purchase agreement includes the estimated account receivable. Yes. And that was entered into evidence. Correct. The amended API, Schedule 2.4, gives a specific line item for what these accounts receivable were valued. And it specifically says for the rent receivable, for the inventory receivable. And Phillips 66 paid money for those. They paid over a million dollars for these receivables that were supposed to be collectible and ultimately were not. And he attested to the accuracy of that Schedule 2, the AAPA, as part of the agreement. Yes. There was significant testimony on the purpose of the purchasing of the accounts receivable in the amended API, what it was valued, the value given to Phillips 66, and then what the value differential was, what they were not able to collect on. As the court noted earlier, because the verdict form didn't differentiate between the specific receivable that was breached in this case, if either the inventory or the rent receivable was sufficiently supported at trial, then Judge Blackburn's decision can stand. It certainly appears the jury rejected your inventory receivables argument claim. It could have been. It could have been that they found $50,000 of the inventory receivable to be compelling. It is, of course, we could make that assumption, but the assumption doesn't need to be made and probably shouldn't. It shouldn't be made because there wasn't a differentiation. We don't know what the jury was basing its decision on. The inventory receivable, as you know, was over $300,000, so $50,000 could have been a portion of that. With regard to the inventory receivable, I'm sorry, with regard to the rent receivable, Mr. Nanda represented that it was worth $50,000. It was ultimately worth zero because Mr. Nanda gave an offset to Gassmart. That was the testimony Mr. Fisher gave at page 573. He testified that Mr. Nanda did not disclose to Phillips 66 the fact that Gassmart was claiming an offset, so the jury could have clearly interpreted this to have been an offset that Mr. Nanda gave to Gassmart as opposed to an offset that Phillips 66 agreed to give to Gassmart after the close of the remediation. Of course. With regard to the remediation, Mr. Nanda alleges that there were four prerequisites for remediation. Only one, the first of the four, was an actual prerequisite. The next three were not. The first is that the contamination needed to have existed at the time of the close. Phillips 66 agrees and understands that. Mr. Schnitzler testified on page 757, lines 15 to 17, and I quote, based on the work Mr. Moscone had done, yes, it was concluded that contamination had occurred during the time period Mr. Nanda owned the assets. It was unequivocally before the jury. This is easily sufficient to support the jury's award here. The next three alleged prerequisites are not in the invoice and the account, the explanation as to why the costs weren't covered or reimbursed. First, Judge Blackburn, as I think Judge Kelly, you noted, he, in his order denying the motion for a new trial, he deemed this argument waived because it was not raised at trial. Because we're in Rule 59 territory, there's no need, but once it's confirmed that that argument was not raised at trial, there's no need to dive further into the evidence. But if we do so, APA section 5.22.3, it doesn't actually require that an invoice and an explanation be provided. All it says is that Mr. Nanda's duty to pay arises 30 days after receipt of an invoice. So it's a timing mechanism. It doesn't say Phillips 66, or it doesn't say Nanda didn't breach or doesn't breach if Phillips 66 doesn't provide this, an invoice. His duty to pay arose because it wasn't covered contamination. And then the explanation, the invoice and the explanation just trigger when his payment is due. There's no dispute now that Mr. Nanda knows that Phillips 66 says exactly, has alleged exactly how much he owes and he has not paid that. With regard to the notice alleged prerequisite, this comes up under both the two counterclaims. But section 11.3, first of all, the written notice requirement is not raised at all in Mr. Nanda's motion for a new trial. He doesn't mention the written notice requirement. He doesn't mention 11.3. So we can't show an abuse of discretion because the trial court wasn't facing this. But second, 11.3 doesn't require notice. Again, this is not a prerequisite. It just says notice shall be deemed sufficient if given in writing via these mailed, you know, overnight or certified mail. So it doesn't say any notice required under the APA must be given in writing or else a breach somehow doesn't count. It just with regards to 5.7, this is only raised, Mr. Nanda only raises section 5.7 with regards to the accounts receivable counterclaim, not with regards to the remediation counterclaim. And you're out of time. So if you'll just wind up. For the reasons that we discussed, I ask that the court affirm the judgment. Thank you very much. Thank you. We'll take this matter under advisement. Thank you, counsel, for your argument. And we'll call the next matter.